Jeffrey Lewis, SB No. 66587
jlewis@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
180 Grand Avenue, Suite 1380
Oakland, CA 94612
Tel.: (510) 463-3900 / Fax: (510) 463-3901

***Attorney for Plaintiff***
***Rancho Association of Retired Employees***

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| RANCHO ASSOCIATION OF RETIRED EMPLOYEES,<br><br>Plaintiff,<br><br>v.<br><br>RANCHO SANTIAGO COMMUNITY COLLEGE DISTRICT,<br><br>Defendant. | No. 8:22-cv-00035<br><br>**COMPLAINT** |

## I.     INTRODUCTION

1.     For over three decades, the Rancho Santiago Community College District (the "**District**") has promised its employees (the "**Retirees**") that if they served the District for 15 or more years, they and their dependents would receive in retirement the same District-funded medical benefits as active employees for the Retiree's life or until age 70, depending on when the Retiree started with the District.

2.     Relying on the District's promises, the Retirees accepted and remained in employment at the District, gave up various wage increases, and dedicated their working years to the District.

1

3.     Despite the Retirees' loyalty and full performance of their employment obligations, the District recently decided to breach its contractual and, thereby, Constitutional obligations, announcing that it would (a) expel Retirees from the health plan the District offers to active employees; (b) require eligible Retirees to enroll in Medicare; (c) require Retirees to pay their Medicare premiums; and (d) offer to pay only for supplemental coverage in a Medicare Advantage plan that affords Retirees less coverage than the plan offered to active employees. In taking these actions, the District dramatically shifted the burden of funding medical care onto Retirees.[1]

4.     The change in coverage will have dire consequences for Retirees. Retirees will be required, for the first time, to pay the lion's share of the costs for their health care, if they can afford it at all. Under the new plan, Retirees will be unable to receive treatments unless those services are covered by Medicare, which means they will either have to pay much higher and increasing amounts to receive the treatments or forgo the treatments entirely. Beyond the cost of the treatments, Retirees will also have to the pay the premiums for Medicare, and at least some of the associated penalties.

5.     The burden will be even greater for those Retirees who were not permitted or did not contribute to Medicare during their working years because they relied on the District's promise of lifetime medical benefits. They will have to pay even greater premiums for less coverage.

6.     Most of the Retirees live on fixed incomes and will be unable to pay these costs or may be able to pay them only by forgoing other essential expenses.

7.     The District's actions could also irreparably harm those Retirees who will lose coverage under the District's new Medicare Advantage plan when they turn 70. Those Retirees may be without insurance between the time their District insurance ends and

---

[1] We refer here and throughout the Complaint to Retirees for readability. But the District's changes apply equally to Retirees' dependents.

they can enroll in Medicare. Plus, they may be subject to lifetime penalties for late enrollment.

8.    On behalf of the District Retirees, the Rancho Association of Retired Employees ("**RARE**") now seeks injunctive and declaratory relief to require the District to restore and honor its commitment to provide Retirees with the same District-funded medical benefits as active employees, without precondition or obligation to enroll in and pay premiums for Medicare.

9.    RARE's membership includes Retirees who were, as active employees, represented by unions, as well as Retirees who were unrepresented as active employees. The District made the same promise regarding retiree health care to all such Retirees. This action seeks declaratory and injunctive relief for the health care benefits owed to all District Retirees.

## II.    JURISDICTION AND VENUE

10.   This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims brought under the laws of the State of California.

11.   The Court has personal jurisdiction over the District because it is located and conducts business in this judicial district and this action arises from the District's conduct occurring here.

12.   The Court may grant declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202. Money damages alone are inadequate, and Plaintiff's members will suffer irreparable injury absent injunctive relief.

13.   Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b) because the Defendant District is located in this judicial district.

## III.    PARTIES

14.   Plaintiff RARE is a nonprofit, mutual benefit corporation organized to promote and protect the welfare and interests of individuals who receive or expect to receive retirement benefits from the District. Regular membership is open to retirees of the

District. Associate membership is open to the spouse, domestic partner, widow, or widower of any person eligible for regular membership.

15.   RARE currently has approximately 182 total members, consisting of 156 regular members and 26 associate members.

16.   Defendant District is a political subdivision of the State of California, duly authorized and existing under the laws of, and by virtue of, the Constitution and laws of the State of California. The District maintains a health care benefits system for current and retired District employees.

## IV.   GENERAL ALLEGATIONS

**A.   The District Promised and for Decades Has Provided Retirees with the Same District-Paid Medical Coverage as It Provides to Current Employees.**

17.   The District has provided medical benefits for Retirees for more than 35 years.

18.   Since at least then, the District has promised to provide Retirees who have served the District for 15 or more years, the same District-paid medical benefits as it provides to current employees.

19.   The District promised these benefits for life to Retirees who first began employment with the District before specified dates in 1986,[2] and until age 70 for those that started afterwards.

20.   The District's promise induced prospective employees to accept jobs with the District and induced employees to remain in their jobs with the District when they would not have otherwise done so.

21.   As employees of the District, some Retirees were part of the mandated California State Teachers' Retirement System, which meant that for a period of time, such Retirees were not allowed to contribute to Medicare. Even when Retirees were permitted (but not

---

[2] One union memorandum of understanding set the cutoff date as July 1, 1986; the remaining two union agreements, as well as the District policy applicable to non-union management employees, set the cutoff date as May 31, 1986.

required) to contribute to Medicare, some Retirees were induced not to contribute by the District's promise of lifetime medical benefits.

22.   Retirees accepted the District's offer of medical benefits in lieu of other benefits, such as wage increases.

23.   The District conveyed its intent to bind itself to the promises described in paragraphs 24–39 in writing, orally, and by implication and practice.

24.   The District memorialized its promises in Board Policy and memoranda of understanding ("**MOUs**") negotiated with labor unions.

25.   In Board Policy 7132, the District promised that District "Managers whose first date of full-time service was prior to May 31, 1986, shall receive the same District-paid medical insurance coverage as is provided to active management employees for life." (Ex. 1.) For those who commenced work with the District after May 31, 1986, the District promised "the same District-paid medical insurance coverage as is provided to active management employees until age 70." (*Id.*)

26.   In MOUs, the District made similar promises to employees represented by the Faculty Association of Rancho Santiago Community College District ("**Faculty**"), the California School Employees Association, Chapter 579 ("**Staff**"), and the California School Employees Association, Chapter 888 ("**Child Care Teachers**").

27.   For example, the District's MOUs with Faculty promise that "[r]etired unit employees and eligible dependents *shall* receive district-paid benefits in accordance with the current medical/dental plans (see [Article] 5.2.1)[.]" (Ex. 2, art. 5.4.1 (emphasis added).)[3] For Retirees who started with the District before May 31, 1986, the District promised to "pay its portion of the insurance premium for life." (*Id.*) For Retirees who started after that date, the District promised to pay "its portion of the insurance premium

---

[3] Unless stated otherwise, this and the other MOUs cited in the Complaint are the versions currently in effect between the District and, respectively, the Faculty, Staff, and Child Care Teachers and Staff. Prior versions of the MOUs that Plaintiff has obtained and reviewed contain the same or effectively similar language.

until the retiree reaches age 70." (*Id.*) For clarity, the MOU spells out that "[e]ligible retirees will receive the *same* medical coverage as current employees[.]"[4] (*Id.*, art. 5.4.2 (emphasis added).)

28.   The District's MOUs with Staff and Child Care Teachers similarly promise that the District will provide District-funded health benefits for Retirees under the same plans as made available to employees, only limiting the length of time for providing those benefits by the date of hire. (*See, e.g.*, Ex. 3, art. 19.6(b) (limiting benefits for Staff hired after July 1, 1986 to the age of 70); Ex. 4, art. 11.8.3 (limiting benefits for Child Care Teachers hired on or after May 31, 1986 to the age of 70).)

29.   The District's MOUs with Staff provide that the "District shall maintain . . . a health insurance program by contributing the agreed upon amount as specified in Article 19.5." (Ex. 3, art. 19.1). Article 19.5, in turn, defines the insurance premiums the District will pay with respect to current employees. (*Id.*, art. 19.5). Immediately following this provision, in Article 19.6, the MOUs provide that "[t]he District *shall* pay *the* health . . . insurance premiums for retiring employees and their eligible dependents[.]" (*Id.*, art. 19.6).

30.   The District's MOUs with Child Care Teachers provide that the "District shall maintain . . . a health insurance program." (Ex. 4, art. 11.1). Article 11.5 defines the insurance premiums the District will pay with respect to current employees. (*Id.*, art. 11.5). Then, in Article 11.8, the MOUs describe the District's payment of premiums on behalf of retirees, promising that "the District will pay towards retiree's insurance

---

[4] After reaching age 65, the MOU for Faculty reads that "coverage will be provided under a supplementary policy." (Ex. 2, art. 5.4.2.) Neither the District nor the Retirees intended "supplementary policy" to refer to supplemental Medicare coverage such as a Medicare Advantage plan, as Medicare was not available to Faculty Retirees when this language was adopted. *See* 21 U.S.C. § 3121(u)(2)(C) (exempting from Medicare tax certain state and local employees, such as Retirees, hired before March 31, 1986). The parties' past practices, which before this year never included a Medicare Advantage plan, further evidence the parties' intent. *See infra* ¶¶ 34–39.

premium the base figure in [Article] 11.5 for the 1999/2000 school year," which is the provision defining the District's premium payments on behalf of employees. (*Id.*, art. 11.8.1).

31.   On information and belief, the District's Board of Trustees (the "**Board**") was made aware of and ratified each of the MOUs and passed each of the Board Policies. (*See, e.g.*, Ex. 5 § 5.4; Ex. 6 § 6.4; Ex. 7 § 6.7)

32.   The District's approval of the MOUs and its Board of Trustees' passage of Board Policy 7132 and the MOUs are explicit and unequivocal manifestations of the District's intent to bind itself to the promises it made Retirees.

33.   Further evidencing the District's intent to be bound by its promises are the conditions the District negotiated for employees to be eligible to receive the medical benefits. By conditioning the benefits on the completion of fifteen or more years of service, the District implied that employees who completed this requirement were entitled to retiree health benefits as a vested right that could not be forfeited.

34.   In addition, the District repeated its promises in communications with employees and Retirees—both in writing and orally—and confirmed these promises through custom and practice.

35.   In written communications with Retirees, the District repeated the promise in its MOUs and Board Policies. For example, the District, through its Director of Personnel Services, wrote to a Retiree on April 3, 1986, "[p]er your request, this is to verify that as a retired employee with 15 or more years of service to this District you are entitled to District paid medical/dental coverage for life as provided by carrier with whom the District contracts." (Ex. 8 (citing Faculty MOU).)

36.   The District repeated the promise in a May 2, 1996 letter to a different Retiree. That letter reads, "[t]his letter is in response to your inquiry regarding your insurance benefits in the event that you should retire." (Ex. 9.) The letter then recites the relevant provisions of the Faculty MOU and concludes with "[t]his means the following: A. You started with [the District] on September 4, 1974, therefore you have over 20 years of

service. B. You will pay the same amount for insurance coverage as an active employee. C. Your insurance benefits will continue indefinitely, although you can decline coverage at any time." (*Id.*)

37.   Former employees, executives, and members of the District's Board of Trustees, who are familiar with the District's negotiations and benefit promises over the past three decades, will testify as to the background, purpose, and intent of the Board Policy and MOUs, including that the District promised Retirees the same District-funded medical coverage as provided to active employees for the Retiree's life or until age 70, depending on the date of hire; that this promise never changed; and that the Board Policy and MOUs never conditioned eligibility for the District's health plan on Retirees' enrollment in and payment of premiums for Medicare.

38.   Retirees will also testify that representatives of the District repeatedly promised to provide them with the same District-funded medical benefits as active employees for life or through age 70, depending on when they, the Retirees, first began working for the District.

39.   The District's policies and practices also reflect that it has—*for decades*—provided Retirees with the same District-funded medical benefits as it provides to active employees and that Retirees have never been required to enroll in and pay the premiums for Medicare Part A & Part B to be eligible for the District-funded medical benefits.[5]

40.   In exchange for, and in reliance on, the promises described in paragraphs 17–39, the Retirees provided services to the District, which created one or more legally binding contracts.

---

[5] At the request of its current insurer, the District began requesting Retirees eligible for *free* Medicare Part A coverage to enroll in Part A. But enrollment did not change the coverage they received from the District and the request was made only of Retirees entitled to Medicare Part A at no cost. Retirees who were not entitled to free Medicare Part A were not required to enroll or pay Medicare premiums.

**B.    The District Has Reneged on Its Promises to Retirees.**

41.   On August 9, 2021, the District's Board met to discuss mandating Retirees enroll in Medicare. (*See* Ex. 10.) The District's Vice Chancellor for Human Resources, Cheng Yu Hou, prepared a memorandum for the Board explaining the proposal and the purpose behind it. (*See* Ex. 11.)

42.   In the memorandum, the Vice Chancellor acknowledged that "[c]urrently" the District provides "Medicare eligible retirees and Medicare eligible spouses (Medicare eligible are those who are age 65 and older) . . . the same medical plans offered to active employees and early retirees[.]" (*Id.* at p. 1.)

43.   The Board was asked to change that by mandating "all Medicare eligible retirees and Medicare eligible spouses enroll in a Medigap plan as the [District's] sponsored medical plan." (*Id.* at p. 2.)[6]

44.   This change would require all Retirees to enroll in Medicare Part A & Part B and to pay their own Medicare premiums. (Ex. 12 at p. 5 ("Medicare Eligible Retiree and Spouses . . . [m]ust enroll in Medicare Part A and/or B beginning 1/1/2022 – 3/31/2022"); *id.* at p. 14 ("The retirees and their Medicare eligible dependents will be responsible for paying the Medicare premiums for Part A, B, and D.").)

45.   The change would mean Retirees would not receive the same District-funded medical benefits as current employees; Retirees would have to enroll in and pay the premiums for Medicare coverage out of their own pockets; and the Medicare Advantage plan provided by the District would not cover all of the procedures and services provided under the current District plan provided to Retirees.

---

[6] The memorandum and the proposal the Board approved indicate the District would offer Retirees a "Medigap plan." But the only plan the District is making available to Retirees going forward is a Medicare Advantage plan. Unlike some Medigap plans, the District's Medicare Advantage plan only covers Medicare-eligible expenses. *See infra* ¶ 52.

46.   The memorandum to the Board confirms the purpose behind the mandate is to "reduce both the total premium costs for medical benefits and the Other Postemployment Benefits ("**OPEB**")[7] liability held by [the District]." (Ex. 11 at p. 1.)

47.   On August 9, 2021, the Board approved the proposal. (Ex. 13 ¶ 6.3.)

48.   On November 8, 2021, the Board amended Board Policy 7132, which is applicable to management employees, to implement the August 9 decision. (Ex. 15 (revised version of Board Policy 7132) (requiring management Retirees to "enroll in Medicare Part A & B, be responsible for Medicare A, B & D premiums," and transition to the District's Medicare insurance plan instead of the plan offered to active employees); *see also* Ex. 16 at pp. 25–26 (reflecting Board's approval of revised Board Policy 7132).)

49.   On November 16, 2021, the District sent Retirees a letter informing them that they and their dependents would no longer be receiving the same medical coverage as active employees, effective July 1, 2022. (Ex. 17.) Instead, the District instructed Retirees that they "MUST" be enrolled in Medicare Parts A & B and would be transitioned to a Medicare Advantage plan. (*Id.* (emphasis in original).)

50.   In the same November 16 letter, the District told Retirees that "[i]t is imperative that you confirm your enrollment in Part A and Part B or confirm you are NOT enrolled by calling Retiree First [the entity the District contracted to administer the plan] . . . by **January 10, 2022** so that there are no lapses in your coverage." (*Id.* (emphasis in original).)

51.   On November 30, 2021, the District's administrator, Retiree First, wrote to a Retiree (and RARE member) to confirm that "there is a deadline to make Retiree First aware of your Medicare Part A and Part B status by January 10th to allow for enough

---

[7] OPEB consists of benefits other than pensions that state and local governments provide to their retired employees, principally in the form of medical benefits. In recognition of its obligations to provide Retirees with the same District-funded medical benefits provided to current employees, the District has set aside more than $41 million to meet its obligations to Retirees. (Ex. 14 at p. 60 (District Tentative Budget 2021–2022).

time to get an appointment to enroll into Parts A and B. If you wait until the last minute, there may not be enough time to get an appointment to get enrolled." (Ex. 18 at p. 1.)

52.   Retiree First's representative also confirmed in in the same correspondence that "[t]he District's Anthem Medicare Advantage Plan will *only* cover Medicare approved services, with the exception of some added hearing and vision services." (*Id.* (emphasis added).)

**C.   Requiring Retirees to Enroll in Medicare and Pay Medicare Premiums Is a Breach of the District's Promises to Retirees.**

53.   The District's wholesale changes to its retiree health care benefits system will have a devastating impact on Retirees, many of whom are elderly individuals who live on fixed incomes and have been or will be required to pay many hundreds of additional dollars a month toward their medical premiums. Many will have to spend large portions of their monthly income on medical premiums and others will have to choose between medical care and other necessities.

54.   For example, one Retiree receives an infusion of antibodies every four weeks for an Immunoglobulin deficiency. The Retiree's current coverage through the District covers nearly 100% of the cost of the infusions, each of which costs more than $14,000. On information and belief, the treatment is not a Medicare-eligible expense and, therefore, will not be covered by the District's Medicare Advantage plan. The Retiree will testify that she cannot afford the cost without her current insurance and, if forced to discontinue the treatment, she has grave concerns for her health and ability to be active in her retirement.

55.   Another Retiree was diagnosed with cancer in 2021. When scheduling a procedure ordered by her doctor, the scheduler mistakenly assumed the Retiree was covered by Medicare and advised her that the procedure was not a Medicare-covered benefit. Fortunately, it was covered by the insurance the Retiree currently receives through the District. She will testify that she loses sleep thinking about the potential loss of her

doctors and specialists who know her cancer history, and the state-of-the-art equipment and treatments she has received.

56.   Other Retirees have expressed concern for their dependents. For example, a Retiree will testify that she would be unable to afford the doctors' visits, medication, and to otherwise care for her daughter with special needs without the medical coverage the District provides. The Retiree will testify that the impact on her and her family will be drastic and life changing if she is forced onto the District's Medicare Advantage plan, not to mention the added costs for Medicare coverage.

57.   Another Retiree will testify that her husband receives IV treatments once a month for a serious immune-compromised health issue. The treatment is covered by the plan that Retirees and current employees currently receive. But it is not a Medicare-eligible expense and, therefore, would not be covered by the District's Medicare Advantage plan. Because the billed cost for the treatment is $20,000 a month, the Retiree will be unable to afford it. The Retiree and her husband will testify the result will be a devastating impact on his health.

58.   Another Retiree has had a number of orthopedic surgeries in his retirement, including a total hip replacement and two lower back fusions. While the orthopedic group that conducted those surgeries accepted the Retiree's current insurance, the Medicare Advantage plan would not cover the full cost of those treatments as his current insurance did. The Retiree will testify that his quality of life depends on regular visits and treatment from his doctors at that orthopedic group.

59.   In reliance on the District's promises, Retirees made numerous life decisions regarding, among other things, whether and for how long to work for the District, how much to save for retirement, and whether to select the District's retiree health care for themselves and their families over other retiree health care options formerly available through their spouse's or other dependent's employer. Many Retirees chose to continue working for the District rather than moving to other, higher paying employment at least in part because of the promise of retiree health care benefits.

60.   Some District Retirees did not pay the Medicare tax based on the District's promise. Consequently, unlike individuals who have contributed to Medicare, those retirees would have to pay to receive Medicare Part A.

61.   In addition to the premiums, Retirees may have to pay late-enrollment penalties. Many Retirees who were eligible to enroll in Medicare, chose not to enroll during their Initial Enrollment Period ("**IEP**"). Medicare imposes a penalty for late enrollment, both for Part A and Part B.

62.   Late enrollees to Part A can be forced to pay up to 10% more for coverage for twice the numbers of years they were eligible but did not enroll in Medicare. For example, a person who enrolled in Part A two (2) years after their IEP would have to pay 10% more in premiums for four (4) years.

63.   Late enrollees to Part B must pay 10% more in premiums for each year they were eligible but did not enroll Medicare. In most cases, they must pay that penalty for as long as they have Part B. By way of example, a person who waited three (3) years after their IEP to enroll in Part B would pay 30% more in premiums for as long as they have Part B, which for most people is the rest of their life.

64.   The District has indicated it would "reimburse any penalties associated with late enrollment in Medicare Part B for eligible retirees." (Ex. 11 at p. 2 (Board Approved Proposal, August 9, 2021) (emphasis added).) But it is not clear how it would do so and for how long it will do so, if at all.

65.   The Board indicated its "*intent* [is] that reimbursement occur only to the length . . . specified in the applicable collective bargaining agreements or Board Policy." (Ex. 11 at p. 2 (Board Approved Proposal, August 9, 2021) (emphasis added).) But the MOUs and Board Policies do not address reimbursement for late enrollment penalties because they do not mention—let alone reference—a requirement that Retirees enroll in Medicare.

66.   The District has not agreed to pay penalties for late enrollment in Part A.

67.   Retirees are years and, in some cases, decades past their IEP. Enrolling them in Medicare, as the District has mandated, would impose on Retirees exorbitant costs that in many cases vastly exceed their fixed budgets.

68.   Additionally, Retirees who are forced to enroll in Medicare now and subsequently lose the District's Medicare Advantage plan when they turn 70 will face additional hardships. Such Retirees may face a gap in coverage or lifetime penalties.[8]

69.   Enrollment in Medicare is governed by a complex set of regulations, many of which turn on when a person enrolls.[9] A person can enroll during their IEP, the general enrollment period ("**GEP**"), or a special enrollment period ("**SEP**"). The regulations penalize people who enroll outside of their IEP or SEP.

70.   The IEP is a seven-month window that begins three months before a person turns 65 and ends three months after the person turns 65. *See* 42 C.F.R. § 407.14(a)(1) (Initial Enrollment Period) (Oct. 1, 2010). If a person continues working past age 65, they can enroll in Medicare during an SEP, which is the eight-month window following an employee's loss of coverage through a group health plan sponsored by their employer. 42 C.F.R. § 406.24(b) (Special Enrollment Period Related to Coverage Under Group Health Plans) (Aug. 26, 2008). Loss of *retiree* coverage does not trigger a SEP. *See* 42 U.S.C. § 1395p(i)(1)(A) (excluding "former employees" from definition of group health plan). Consequently, Retirees who have to find coverage on their own when they turn 70 could face a gap in coverage between when they lose coverage through the District and the GEP, when they can enroll in Medicare.

---

[8] *See generally How to drop Part A & Part B*, Medicare.gov, https://www.medicare.gov/basics/get-started-with-medicare/sign-up/ready-to-sign-up-for-part-a-part-b/how-to-drop-part-a-part-b (last visited Jan. 4, 2022).

[9] *See generally Original Medicare (Part A and B) Eligibility and Enrollment*, Ctrs. for Medicare & Medicaid Servs., https://www.cms.gov/Medicare/Eligibility-and-Enrollment/OrigMedicarePartABEligEnrol (last visited Jan. 4, 2022).

71.   Additionally, Retirees would face lifetime penalties for late enrollment. 42 C.F.R. § 408.22 (Increased Premiums for Late Enrollment and for Reenrollment) (Oct. 1, 2007) (explaining that for individuals who "reenroll[] after termination . . . the standard monthly premium . . . is increased by ten percent for each" 12-month period they were not covered by Medicare).

72.   The District's Retirees have fully performed their duties under their contracts with the District and are entitled to their vested benefits and the benefits of their bargains.

**COUNT One — BREACH OF CONTRACT AND SPECIFIC PERFORMANCE UNDER CALIFORNIA LAW: FAILURE TO PROVIDE RETIREES THE SAME DISTRICT-FUNDED MEDICAL PLAN AS CURRENT EMPLOYEES**

73.   Plaintiff incorporates by reference paragraphs 1–72 set forth above as though fully set forth herein.

74.   District-funded retiree health care benefits were an integral part of the total compensation received by District Retirees, including members of RARE, in exchange for the performance of their services as active employees of the District.

75.   Retirees have performed their duties under their contracts with the District.

76.   The District is legally bound to continue its system of providing Retirees with 15 or more years of service to the District the same District-paid medical plan as it provides to current employees for the Retiree's life or until age 70, depending on their date of hire.

77.   The District's promise to Retirees was contingent only on Retirees serving the District for 15 or more years.

78.   The Board Policy and MOUs never conditioned eligibility for the District-funded health plan on Retirees' enrollment in and payment of premiums for Medicare.

79.   At the time the District originally made its promise to Retirees, Retirees were prohibited from enrolling in Medicare.

80.   The District has breached its promises by failing to provide Retirees with the same District-paid medical plan as the District provides current employees and by forcing them to enroll in and bear the costs of Medicare premiums and any associated penalties.

15

81.   The Medicare Advantage plan in which the District is forcing Retirees to enroll offers different and less medical benefits than the District provides current employees.

82.   To be eligible for coverage under the District's Medicare Advantage plan, the District has mandated Retirees to enroll in and pay the premiums for Medicare Part A & Part B.

83.   The Retirees will be damaged by the loss in health care benefits and the expense of Medicare and medical treatment.

84.   The District's change in coverage will deprive Retirees of the treatments they receive or would have received under the plan the District offers current employees.

85.   The District's mandate will also damage Retirees monetarily. Retirees who never contributed to Medicare will be forced to pay premiums to enroll in Medicare Part A, along with any associated penalties. All Retirees will have to enroll in and pay the premiums for Medicare Part B, and possibly be responsible for associated penalties for the rest of their lives. To afford such payments, Retirees may be forced to forgo other necessary expenses or forgo treatment entirely.

86.   The District's mandate will also have irreparable repercussions for those Retirees who will have to obtain their own coverage when the Retiree is 70 years old. Retirees who have to find coverage on their own when they turn 70 could face a gap in coverage between when they lose coverage through the District and the GEP, when they can enroll in Medicare. Additionally, Retirees would face lifetime penalties for late enrollment. 42 C.F.R. § 408.22 (explaining that for individuals who "reenroll[] after termination . . . the standard monthly premium . . . is increased by ten percent for each" 12-month period they were not covered by Medicare).

### COUNT Two — BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CONTRACT UNDER CALIFORNIA LAW (*ALTERNATIVE* TO COUNT 1)

87.   Plaintiff incorporates by reference paragraphs 1–86 set forth above as though fully set forth herein.

88.   Under the law of the State of California, a covenant of good faith and fair dealing is implied by law in all contracts to ensure that neither party will do anything that hinders the rights of the other party to receive the benefits of the agreement. The covenant is designed to effectuate the intentions and reasonable expectations of the parties reflected by the promises in the contract. The essence of the covenant is that the parties must conduct themselves in an objectively reasonable manner. In the employment context, the implied covenant prevents the employer from frustrating the employee's enjoyment of any rights provided in the contract.

89.   By virtue of their existence, the contracts between the District and the Retirees contain a covenant of good faith and fair dealing. The covenant imposes on the District a duty to refrain from taking any action that would frustrate the Retirees' rights to, at a minimum, the same District-funded medical coverage the District provides for its current employees.

90.   The District has breached the covenant of good faith and fair dealing and frustrated the Retirees' rights. By expelling Retirees from the plan offered to current employees and to a Medicare Advantage plan that offers less coverage, the District has deprived Retirees of the same medical coverage current employees receive. Additionally, the District has frustrated Retirees' right to District-funded care by shifting the burden of paying for medical benefits onto Retirees by mandating they enroll in and pay the medical premiums for Medicare Part A & Part B.

91.   The District's actions are not objectively reasonable in light of the contracts it has with the Retirees. Furthermore, the District's failure to discharge its contractual responsibilities is not prompted by an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act that unfairly frustrates the agreed common purposes of the contracts and disappoints the reasonable expectations of the Retirees. The District has, therefore, breached the covenant of good faith and fair dealing.

92.   As a direct and proximate result of the District's breach of the covenant of good faith and fair dealing, the Retirees will be damaged monetarily. The District's change in

coverage will deprive Retirees of the treatments they receive or would have received under the plan the District offers current employees.

93.   The District's mandate will also damage Retirees monetarily. Retirees who never contributed to Medicare will be forced to pay premiums to enroll in Medicare Part A, along with any associated penalties. All Retirees will have to enroll in and pay the premiums for Medicare Part B, and possibly be responsible for associated penalties for the rest of their lives. To afford such payments, Retirees may be forced to forgo other necessary expenses or forgo treatment entirely.

94.   The District's mandate will also have irreparable repercussions for those Retirees who will have to obtain their own coverage when they are 70 years old. Retirees who have to find coverage on their own when they turn 70 could face a gap in coverage between when they lose coverage through the District and the GEP, when they can enroll in Medicare. Additionally, Retirees would face lifetime penalties for late enrollment. 42 C.F.R. § 408.22 (explaining that for individuals who "reenroll[] after termination . . . the standard monthly premium . . . is increased by ten percent for each" 12-month period they were not covered by Medicare).

### COUNT Three — IMPAIRMENT OF CONTRACT UNDER THE UNITED STATES CONSTITUTION: FAILURE TO PROVIDE RETIREES THE SAME MEDICAL BENEFITS AS CURRENT EMPLOYEES

95.   Plaintiff incorporates by reference paragraphs 1–94 set forth above as though fully set forth herein.

96.   Retiree health care benefits were an integral part of the total compensation received by District Retirees, including members of RARE, in exchange for the performance of their services as active employees of the District.

97.   Retirees have performed their duties under their contracts with the District.

98.   Public employment that provides for post-employment benefits gives rise to certain legal obligations on the part of the public employer, which are subject to the Contract Clause of the United States Constitution.

99.   An integral part of the District's compensation to its Retirees are the post-employment medical benefits the District promised Retirees and constitute vested benefits that are earned compensation.

100. The District is legally bound to continue its system of providing Retirees who provided 15 or more years of service to the District the same District-paid medical plan as it provides to current employees for the Retiree's life or until age 70, depending on their date of hire.

101. The District has breached that promise and substantially impaired its contracts with Retirees by failing to provide Retirees with the same District-paid medical benefits as the District provides current employees and shifting the burden of paying for medical benefits onto Retirees by mandating they enroll in and pay the medical premiums for Medicare Part A & Part B.

102. The Medicare Advantage plan the District is forcing Retirees to enroll in offers different and less medical benefits than the District provides current employees.

103. To be eligible for coverage under the District's Medicare Advantage plan, the District has mandated Retirees enroll in and pay the premiums for Medicare Part A & Part B.

104. The Retirees will be damaged by the loss in health care benefits and the expense of Medicare and medical treatment.

105. The District's change in coverage will deprive Retirees of the treatments they receive or would have received under the plan the District offers current employees.

106. The District's mandate will also damage Retirees monetarily. Retirees who never contributed to Medicare will be forced to pay premiums to enroll in Medicare Part A, along with any associated penalties. All Retirees will have to enroll in and pay the premiums for Medicare Part B, and possibly be responsible for associated penalties for the rest of their lives. To afford such payments, Retirees may be forced to forgo other necessary expenses or forgo treatment entirely.

107. The District's mandate will also have irreparable repercussions for those Retirees who will have to obtain their own coverage when they are 70 years old. Retirees who have to find coverage on their own when they turn 70 could face a gap in coverage between when they lose coverage through the District and the GEP, when they can enroll in Medicare. Additionally, Retirees would face lifetime penalties for late enrollment. 42 C.F.R. § 408.22 (explaining that for individuals who "reenroll[] after termination . . . the standard monthly premium . . . is increased by ten percent for each" 12-month period they were not covered by Medicare).

108. The District's actions were neither reasonable nor necessary to fulfilling an important public purpose and were not, therefore, justifiable. The District's actions unlawfully impair a contractual obligation, in violation of Article I, Section 10, Clause 1 of the United States Constitution.

**COUNT Four — IMPAIRMENT OF CONTRACT UNDER THE CALIFORNIA CONSTITUTION: FAILURE TO PROVIDE RETIREES THE SAME DISTRICT-FUNDED MEDICAL BENEFITS AS CURRENT EMPLOYEES**

109. Plaintiff incorporates by reference paragraphs 1–108 set forth above as though fully set forth herein.

110. District-funded Retiree health care benefits were an integral part of the total compensation received by District Retirees, including members of RARE, in exchange for the performance of their services as active employees of the District.

111. Retirees have performed their duties under their contracts with the District.

112. Public employment that provides for post-employment benefits gives rise to certain legal obligations on the part of the public employer, which are subject to the Contract Clause of the California Constitution.

113. An integral part of the District's compensation to its Retirees are the post-employment medical benefits the District promised Retirees and constitute vested benefits that are earned compensation.

114. The District is legally bound to continue its system of providing Retirees with 15 or more years of service to the District the same District-paid medical plan as it provides to current employees for the Retiree's life or until age 70, depending on their date of hire.

115. The District has breached that promise and substantially impaired its contracts with Retirees by failing to provide Retirees with the same District-paid medical plan as the District provides current employees and shifting the burden of paying for medical benefits onto Retirees by mandating they enroll in and pay the medical premiums for Medicare Part A & Part B.

116. The Medicare Advantage plan the District is forcing Retirees to enroll in offers different and less medical benefits than the District provides current employees.

117. To be eligible for coverage under the District's Medicare Advantage plan, the District has mandated Retirees enroll in and pay the premiums for Medicare Part A & Part B.

118. The Retirees will be damaged by the loss in health care benefits and the expense of Medicare and medical treatment.

119. The District's change in coverage will deprive Retirees of the treatments they receive or would have received under the plan the District offers current employees.

120. The District's mandate will also damage Retirees monetarily. Retirees who never contributed to Medicare will be forced to pay premiums to enroll in Medicare Part A, along with any associated penalties. All Retirees will have to enroll in and pay the premiums for Medicare Part B, and possibly be responsible for associated penalties for the rest of their lives. To afford such payments, Retirees may be forced to forgo other necessary expenses or forgo treatment entirely.

121. The District's mandate will also have irreparable repercussions for those Retirees who will have to obtain their own coverage when they are 70 years old. Retirees who have to find coverage on their own when they turn 70 could face a gap in coverage between when they lose coverage through the District and the GEP, when they can enroll in Medicare. Additionally, Retirees would face lifetime penalties for late enrollment.

42 C.F.R. § 408.22 (explaining that for individuals who "reenroll[] after termination . . . the standard monthly premium . . . is increased by ten percent for each" 12-month period they were not covered by Medicare).

122. The District's actions were neither reasonable nor necessary to fulfilling an important public purpose and were not, therefore, justifiable. The District's actions unlawfully impair a contractual obligation, in violation of Article I, Section 9 of the California Constitution.

### COUNT Five — PROMISSORY ESTOPPEL UNDER CALIFORNIA LAW: FAILURE TO PROVIDE RETIREES THE SAME MEDICAL BENEFITS AS CURRENT EMPLOYEES

123. Plaintiff incorporates by reference paragraphs 1–122 set forth above as though fully set forth herein.

124. District-funded Retiree health care benefits were an integral part of the total compensation received by District Retirees, including members of RARE, in exchange for the performance of their services as active employees of the District.

125. Retirees have performed their duties under their contracts with the District.

126. Retirees reasonably and detrimentally relied on the District's promises in that:

    a.  Retirees were induced to accept employment with the District;

    b.  Retirees were induced to remain employed with the District;

    c.  Retirees were induced to continue receiving the District's health care benefits, rather than those available to them through their spouses' employers;

    d.  Retirees were prohibited from and/or induced not to make Medicare contributions;

    e.  Retirees were induced by the promise of retiree health care benefits to forgo other benefits while employed; and

    f.  Retirees' dependents were induced to give up health care benefits available through their own employers based on the coverage promised to them by the District.

127. The District knew or should have known that Retirees would rely on the District's promises and that the District's promises would induce the Retirees to perform the above-listed acts.

128. The District has breached its promises by failing to provide Retirees with the same District-paid medical plan as the District provides current employees and by shifting the burden of paying for medical benefits onto Retirees by mandating they enroll in and pay the medical premiums for Medicare Part A & Part B.

129. The Medicare Advantage plan in which the District is forcing Retirees to enroll offers different and less medical benefits than the District provides current employees.

130. To be eligible for coverage under the District's Medicare Advantage plan, the District has mandated Retirees enroll in and pay the premiums for Medicare Part A & Part B.

131. The Retirees will be damaged by the loss in health care benefits and the expense of Medicare and medical treatment.

132. The District's change in coverage will deprive Retirees of the treatments they receive or would have received under the plan the District offers current employees.

133. The District's mandate will also damage Retirees monetarily. Retirees who never contributed to Medicare will be forced to pay premiums to enroll in Medicare Part A, along with any associated penalties. All Retirees will have to enroll in and pay the premiums for Medicare Part B, and possibly be responsible for associated penalties for the rest of their lives. To afford such payments, Retirees may be forced to forgo other necessary expenses or forgo treatment entirely.

134. The District's mandate will also have irreparable repercussions for those Retirees who will have to obtain their own coverage when the Retirees are 70 years old. Retirees who have to find coverage on their own when they turn 70 could face a gap in coverage

between when they lose coverage through the District and the GEP, when they can enroll in Medicare. Additionally, Retirees would face lifetime penalties for late enrollment. 42 C.F.R. § 408.22 (explaining that for individuals who "reenroll[] after termination . . . the standard monthly premium . . . is increased by ten percent for each" 12-month period they were not covered by Medicare).

### COUNT Six — DUE PROCESS UNDER THE UNITED STATES CONSTITUTION & 42 U.S.C. § 1983: FAILURE TO PROVIDE RETIREES THE SAME MEDICAL BENEFITS AS CURRENT EMPLOYEES

135. Plaintiff incorporates by reference paragraphs 1–134 set forth above as though fully set forth herein.

136. Retiree health care benefits were an integral part of the total compensation received by District Retirees, including members of RARE, in exchange for the performance of their services as active employees of the District.

137. Retirees have a vested property right in receiving the same District-funded medical benefits as active employees:

    a. The District promised to provide Retirees and their dependents the same District-funded medical plan as current employees;

    b. The Board Policy and MOUs in which these promises were memorialized never conditioned eligibility for the District-funded health plan on Retirees' enrollment in and payment of premiums for Medicare;

    c. In fact, Retirees were prohibited from and/or induced not to make Medicare contributions by the District's promises;

    d. The Retirees reasonably and detrimentally relied on the District's promise;

    e. The Retirees accepted employment and decided to forgo other benefits, while employed, based on the promise of retiree health care benefits; and

    f. Retirees have performed their duties under their contracts with the District.

138. The District has breached it contracts with Retirees by failing to provide them and their dependents with the same medical plan as the District provides to current employees

and by shifting the burden of paying for medical benefits onto Retirees by mandating they enroll in and pay the medical premiums for Medicare Part A & Part B.

139. The Medicare Advantage plan in which the District is forcing Retirees to enroll offers different and less medical benefits than the District provides current employees.

140. To be eligible for coverage under the District's Medicare Advantage plan, the District has mandated Retirees enroll in and pay the premiums for Medicare Part A & Part B.

141. The Retirees will be damaged by the loss in health care benefits and the expense of Medicare and medical treatment.

142. The District's change in coverage will deprive Retirees of the treatments they receive or would have received under the plan the District offers current employees.

143. The District's mandate will also damage Retirees monetarily. Retirees who never contributed to Medicare will be forced to pay premiums to enroll in Medicare Part A, along with any associated penalties. All Retirees will have to enroll in and pay the premiums for Medicare Part B, and possibly be responsible for associated penalties for the rest of their lives. To afford such payments, Retirees may be forced to forgo other necessary expenses or forgo treatment entirely.

144. The District's mandate will also have irreparable repercussions for those Retirees who will have to obtain their own coverage when they are 70 years old. Retirees who have to find coverage on their own when they turn 70 could face a gap in coverage between when they lose coverage through the District and the GEP, when they can enroll in Medicare. Additionally, Retirees would face lifetime penalties for late enrollment. 42 C.F.R. § 408.22 (explaining that for individuals who "reenroll[] after termination . . . the standard monthly premium . . . is increased by ten percent for each" 12-month period they were not covered by Medicare).

145. The District's actions were neither reasonable nor necessary to fulfilling an important public purpose and were not, therefore, justifiable.

146. Under the Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, the District may not take away this vested property right without compensating Retirees for the value that it represents.

### COUNT Seven — DUE PROCESS UNDER THE CALIFORNIA CONSTITUTION: FAILURE TO PROVIDE RETIREES THE SAME MEDICAL BENEFITS AS CURRENT EMPLOYEES

147. Plaintiff incorporates by reference paragraphs 1−146 set forth above as though fully set forth herein.

148. District-funded Retiree health care benefits were an integral part of the total compensation received by District Retirees, including members of RARE, in exchange for the performance of their services as active employees of the District.

149. Retirees have a vested property right in receiving the same District-funded medical plan as active employees:

    a. The District promised to provide Retirees and their dependents the same District-funded medical plan as current employees;

    b. The Board Policy and MOUs in which these promises were memorialized never conditioned eligibility for the District-funded health plan on Retirees' enrollment in and payment of premiums for Medicare;

    c. In fact, Retirees were prohibited from and/or induced not to make Medicare contributions by the District's promises;

    d. The Retirees reasonably and detrimentally relied on the District's promise;

    e. The Retirees accepted and remained in employment and decided to forgo other benefits, while employed, based on the promise of retiree health care benefits; and

    f. Retirees have performed their duties under their contracts with the District.

150. The District has breached it contracts with Retirees by failing to provide them and their dependents with the same District-funded medical plan as the District provides to

current employees and by shifting the burden of paying for medical benefits onto Retirees by mandating they enroll in and pay the medical premiums for Medicare Part A & Part B.

151. The Medicare Advantage plan in which the District is forcing Retirees to enroll offers different and less medical benefits than the District provides current employees.

152. To be eligible for coverage under the District's Medicare Advantage plan, the District has mandated Retirees enroll in and pay the premiums for Medicare Part A & Part B.

153. The Retirees will be damaged by the loss in health care benefits and the expense of Medicare and medical treatment.

154. The District's change in coverage will deprive Retirees of the treatments they receive or would have received under the plan the District offers current employees.

155. The District's mandate will also damage Retirees monetarily. Retirees who never contributed to Medicare will be forced to pay premiums to enroll in Medicare Part A, along with any associated penalties. All Retirees will have to enroll in and pay the premiums for Medicare Part B, and possibly be responsible for associated penalties for the rest of their lives. To afford such payments, Retirees may be forced to forgo other necessary expenses or forgo treatment entirely.

156. The District's mandate will also have irreparable repercussions for those Retirees who will have to obtain their own coverage when they are 70 years old. Retirees who have to find coverage on their own when they turn 70 could face a gap in coverage between when they lose coverage through the District and the GEP, when they can enroll in Medicare. Additionally, Retirees would face lifetime penalties for late enrollment. 42 C.F.R. § 408.22 (explaining that for individuals who "reenroll[] after termination . . . the standard monthly premium . . . is increased by ten percent for each" 12-month period they were not covered by Medicare).

157. The District's actions were neither reasonable nor necessary to fulfilling an important public purpose and were not, therefore, justifiable.

158. Under Article I, Section 7 of the California Constitution, the District may not take away this vested property right without compensating Retirees for the value that it represents.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

On Count One:

a.  That this Court declare that Retirees with 15 or more years of service to the District and their dependents have a contractual right to, and vested property interest in, the same District-funded medical plan that the District provides to current employees, without any precondition or obligation to enroll in and pay the premiums and associated penalties for Medicare.

b.  That this Court declare that the District breached its contracts with Retirees and deprived them of a vested property interest when it approved changes to its retiree health care benefit system that failed to provide Retirees with 15 or more years of service to the District and their dependents with the same District-funded medical plan that the District provides to current employees and required Retirees to enroll in and pay the premiums and associated penalties for Medicare.

c.  That this Court order specific performance of the District's contractual obligations, including an order requiring the District to continue providing Retirees with 15 or more years of service to the District and their dependents with coverage under the same District-funded medical plan that the District provides to current employees for the duration to which they are entitled (for the Retiree's life or until age 70, depending on Retirees' satisfaction of applicable eligibility criteria).

d.  That this Court enjoin the District from changing the health care benefit system for Retirees.

e. That this Court enjoin the District from requiring Retirees to enroll in and pay the premiums and associated penalties for Medicare.

f. That this Court award such additional or alternative relief as may be just, proper, and equitable.

On Count Two, and in alternative to Count One:

a. That this Court declare that Retirees with 15 or more years of service to the District and their dependents have a contractual right to, and vested property interest in, the same District-funded medical benefits that the District provides to current employees, without precondition or obligation to enroll in and pay premiums for Medicare.

b. That this Court declare that the District breached its contracts with Retirees, deprived them of a vested property interest, and breached the covenant of good faith and fair dealing when it approved changes to its retiree health care benefit system that deprived Retirees of the same medical plan provided to current employees and shifted the burden of paying for medical benefits onto Retirees by mandating they enroll in and pay the medical premiums for Medicare Part A & Part B.

c. That this Court enjoin the District from changing the health care benefit system for Retirees and, instead, require the District to continue providing Retirees with 15 or more years of service to the District and their dependents with coverage under the same District-funded medical plan that the District provides to current employees for the duration to which they are entitled (for the Retiree's life or until age 70, depending on Retirees' satisfaction of applicable eligibility criteria).

d. That this Court enjoin the District from requiring Retirees to enroll in and pay the premiums and associated penalties for Medicare.

e. That this Court award such additional or alternative relief as may be just, proper, and equitable.

On Counts Three and Four:

    a.  That this Court declare that Retirees with 15 or more years of service to the District and their dependents have a contractual and Constitutional right to, and vested property interest in, the same District-funded medical plan that the District provides to current employees, without precondition or obligation to enroll in and pay premiums for Medicare.

    b.  That this Court declare that the District breached its contracts with Retirees, deprived them of a vested property interest, and substantially impaired the District's contractual obligations to the Retirees under the United States and California Constitutions when it approved changes to its retiree health care benefit system that failed to provide Retirees with 15 or more years of service to the District and their dependents with the same District-funded medical plan that the District provides to current employees and shifted the burden of paying for medical benefits onto Retirees by mandating they enroll in and pay the medical premiums for Medicare Part A & Part B.

    c.  That this Court enjoin the District from changing the health care benefit system for Retirees and, instead, require the District to continue providing Retirees with fifteen or more years of service to the District and their dependents with coverage under the same District-funded medical plan that the District provides to current employees for the duration to which they are entitled (for the Retiree's life or until age seventy, depending on Retirees' satisfaction of applicable eligibility criteria).

    d.  That this Court enjoin the District from requiring Retirees to enroll in and pay the premiums and associated penalties for Medicare.

    e.  That, with respect to Count Three, this Court award reasonable attorneys' fees and costs.

f.   That this Court award such additional or alternative relief as may be just, proper, and equitable.

On Count Five:

a.   That this Court declare that Retirees with 15 or more years of service to the District and their dependents have reasonably and detrimentally relied on the District's promise to provide them with the same District-funded medical plan that it provides to current employees.

b.   That this Court declare that the District's promises to Retirees were never conditioned on their enrollment in and payment of Medicare premiums and associated penalties.

c.   That this Court declare that the District is estopped from carrying out, implementing, or continuing to implement any change to its retiree health care benefit system that would deprive Retirees with 15 or more years of service to the District and their dependents of the same District-funded medical plan that the District provides to current employees, including any change that would require Retirees to enroll in and pay the premiums and associated penalties for Medicare.

d.   That this Court enjoin the District from changing the health care benefit system for Retirees and, instead, require the District to continue providing Retirees with 15 or more years of service to the District and their dependents with coverage under the same District-funded medical plan that the District provides to current employees for the duration to which they are entitled (for the Retiree's life or until age 70, depending on Retirees' satisfaction of applicable eligibility criteria).

e.   That this Court enjoin the District from requiring Retirees to enroll in and pay the premiums and associated penalties for Medicare.

f.   That this Court award such additional or alternative relief as may be just, proper, and equitable.

On Counts Six and Seven:

    a. That this Court declare that Retirees with 15 or more years of service to the District and their dependents have a contractual and Constitutional right to, and vested property interest in, the same District-funded medical plan that the District provides to current employees, without precondition or obligation to enroll in and pay premiums for Medicare.

    b. That this Court declare that the District breached its contracts with Retirees, deprived them of a vested and Constitutionally protected property interest, and denied the Retirees due process under the United States and California Constitutions when it approved changes to its retiree health care benefit system that failed to provide Retirees with 15 or more years of service to the District and their dependents with the same District-funded medical plan that the District provides to current employees and shifted the burden of paying for medical benefits onto Retirees by mandating they enroll in and pay the medical premiums for Medicare Part A & Part B.

    c. That this Court enjoin the District from changing the health care benefit system for Retirees and, instead, require the District to continue providing Retirees with 15 or more years of service to the District and their dependents with coverage under the same District-funded medical plan that the District provides to current employees for the duration to which they are entitled (for the Retiree's life or until age 70, depending on Retirees' satisfaction of applicable eligibility criteria).

    d. That this Court enjoin the District from requiring Retirees to enroll in and pay the premiums and associated penalties for Medicare.

    e. That, with respect to Count Six, this Court award reasonable attorneys' fees and costs.

    f. That this Court award such additional or alternative relief as may be just, proper, and equitable.

32

1

2     DATED this 10th day of January, 2022.

3                                   KELLER ROHRBACK L.L.P.

4
                                    By  */s/ Jeffrey Lewis*
5                                        Jeffrey Lewis, SB No. 66587
                                         180 Grand Avenue, Suite 1380
6                                        Oakland, CA 94612
                                         Tel.: (510) 463-3900 / Fax: (510) 463-3901
7                                        jlewis@kellerrohrback.com
8
9                                        Matthew Gerend, *pro hac motion forthcoming*
                                         Garrett Heilman, *pro hac motion forthcoming*
10                                       1201 Third Avenue, Suite 3200
                                         Seattle, WA 98101
11                                       Tel.: (206) 623-1900 / Fax: (206) 623-3384
                                         mgerend@kellerrohrback.com
12                                       gheilman@kellerrohrback.com
13
14                                       ***Attorneys for Plaintiff***
15                                       ***Rancho Association of Retired Employees***

16

17

18

19

20

21

22

23

24

25

26

27

28